IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,

           Plaintiff,

v.                                            CIVIL ACTION NO. 2:06-cv-00630

DENVER DAVIS, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiff's Motion for Summary Judgment [Docket 43]. The plaintiff, State Automobile Mutual Insurance Company ("State Auto"), argues that the defendant has presented no factual dispute in this declaratory judgment action, and that the plaintiff is entitled to judgment as a matter of law. For the reasons that follow, the plaintiff's motion is **GRANTED**.

**I.**        **Background**

State Auto brought this declaratory judgment action to determine its obligations, if any, to defend and indemnify the defendants in a state court action pursuant to a Series One Contractors Policy issued by State Auto to Filter Services International, Inc. ("Filter Services International"). The underlying action was filed by Stephen and Mary Bailey, Christopher and Shannon Aliff, and American Filter Services, Inc. ("American Filter") in the Circuit Court of Nicholas County, West Virginia, and alleged claims of intentional tortious conduct against Eddie Davis, his father Denver Davis, and their company, Filter Services International.

The state court plaintiffs allege a pattern of harassment and intimidation by Denver and Eddie Davis aimed primarily at Stephen Bailey. The plaintiffs claim that the Denver and Eddie Davis and Filter Services committed certain acts under a common scheme with the goal of running Mr. Bailey, Mr. Aliff and American Filter out of business. They further allege that Denver and Eddie Davis harassed and annoyed the Baileys and the Aliffs on a regular basis. The forms of harassment alleged by the plaintiffs include: verbal harassment, intimidation and threats; taunting, cursing and making rude and obscene gestures; driving aggressively and in a dangerous manner toward the plaintiffs in an attempt to taunt, intimidate and threaten; and stalking and following the plaintiffs around in an effort to intimidate and harass. The defendants' allegedly harassing conduct escalated throughout the summer and into the fall of 2004, and culminated in Denver Davis battering Stephen Bailey. The state court plaintiffs seek damages for intentional infliction of emotional distress and punitive damages for the defendants' alleged malicious, willful, reckless, and outrageous behavior.

The defendants filed an answer and a counterclaim to the state court complaint. The defendants did not contest that Denver Davis battered Mr. Bailey. In fact, Denver Davis pled *nolo contendre* to battery and was convicted and sentenced in June 2006. (Pl.'s Mem. Supp. of Mot. Bifurcate Ex. A.) The defendants allege, however, that Stephen Bailey threatened and verbally assaulted Denver Davis and that Eddie Davis did not participate in any way in the fight. The defendants further allege that after the fight, Mr. Bailey made false and malicious allegations against Eddie Davis.

On August 11, 2006, State Auto filed the instant declaratory judgment action seeking a determination that it has no duty to indemnify or defend the defendants in the underlying state court action because the underlying complaint only alleges intentional acts. The defendants filed a

counterclaim alleging that State Auto failed to act in good faith in investigating or defending them in violation of the policy, insurance industry standards, the laws of West Virginia and the United States.

## II.     Standard of Review

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.     Analysis

The policy in effect at the time of the underlying acts provides coverage to Filter Services International for liability arising out of bodily injury, personal injury or property damage "caused by an 'occurrence.'" [Docket 5.] The policy also covers executive officers and directors "with

respect to their duties as . . . officers or directors," and other employees "for acts within the scope of their employment." [Docket 5.] The policy provides that the insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured. [Docket 5, p.17] State Auto asserts that the underlying complaint alleges intentional acts and, therefore, the "expected or intended" exclusion applies. (Compl. ¶¶ 27-31.)

The West Virginia Supreme Court "has repeatedly held that when the evidence established that a policyholder acted with a wrongful intent, there was no coverage under an insurance policy because of an intentional acts exclusion." *Farmers and Mechanics Mutual Ins. Co., v. Cook,* 557 S.E.2d 801, 808 (W.Va. 2001) (hereafter "*Cook*"); *see also Columbia Casualty Company v. Westfield Ins. Co.*, 617 S.E.2d 797 (W.Va. 2005); *State Bancorp, Inc., v. United States Fid. & Guar. Ins. Co.*, 483 S.E.2d 228 (W.Va. 1997).

Neither party disputes that the underlying complaint states causes of action that are intentional in nature. The only real dispute is whether the defendants acted in self defense, which is an exception to the "expected or intended" consequences exclusion to coverage. [Docket 5, p.17] ("This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."). West Virginia recognizes the same exception:

> [W]e hold that a loss which results from an act committed by a policyholder in self-defense or in defense of another is not, as a matter of law, expected or intended by the policyholder. Where a policyholder establishes he or she properly acted in self-defense or in defense of another, the insurance company may not rely upon an intentional acts exclusion to deny coverage.

*Cook*, 557 S.E.2d at 810. The court must therefore review the allegations surrounding the physical altercation in the light most favorable to the defendant to determine whether the defendants "use[d] reasonable force to protect persons or property."

Eddie Davis, a defendant and the son of Denver Davis, testified in his deposition that the defendants believed that one of their former employees had stolen customer lists from Filter Services International. (E. Davis Depo., p.18.) In an attempt to determine whether that employee was sharing information with the plaintiffs and American Filter, Eddie and Denver Davis drove to Chris Aliff's house as they had done on multiple occasions for the same reason. (E. Davis Depo, p.18.) After turning around in the driveway (E. Davis Depo, p.20), the defendants left Mr. Aliff's property and drove away from his house. Stephen Bailey left Mr. Aliff's house within minutes, and, as he came to the crest of a hill, noticed the defendants' vehicle stopped in the center of a one-lane road. (D. Davis Depo., p.38.) After slamming on his brakes, both Mr. Bailey and the Davis defendants exited their respective vehicles.

Viewed in the light most favorable to the non-movant, Stephen Bailey came around the front of his truck and stated "'[i]f you got something to say to me, say it now' and swinging his fists . . . overhanded, and [Denver Davis] hit him . . . and they went into the ditch and were fighting." (E. Davis Depo, p.31.)

> Q. Did he make a hand like he was going to punch your father?
> A. Yeah, it was a fist.
> Q. So, I – I once again, when you're demonstrating it, it looks like he is flailing his arms back and forth.
> A. Basically, yes, but with a fist like this, like I say, I don't know how –
> Q. More like frustrated and angry, would you say?
> A. No, just like he didn't know how to – like he didn't know how to throw a punch or something. . . . He was trying to hit him but didn't – but didn't know how.
> Q. Now, you're smiling and, like, reflecting on that. It's almost like it was a comical scene.
> A. No just – no just – I wanted to say it looked like a girl, what a girl would do . . . .

(E. Davis Depo., p.31)

-5-

Denver Davis then punched Mr. Bailey in the face, sending him back into a ditch. He then sat on top of Mr. Bailey, and proceeded to punch and beat him while Mr. Bailey attempted to fight back and cover himself. (E. Davis Depo., p.33.) According to Eddie and Denver Davis, Mr. Bailey never punched Denver Davis. Indeed, Eddie Davis never thought his father was in any danger: "He wasn't in any harm's way. At the time, he was sitting on top of [Mr. Bailey] and he was fine." (E. Davis Depo. p.35.) Denver Davis walked away from the fight with no bruises, no scratches, and no injuries other than a sore neck. (D. Davis Depo., p.39)

Although the parties present differing factual accounts of the incident, the defendants have alleged that Stephen Bailey initiated the exchange. Viewing the evidence in the light most favorable to the defendants, however, I must find that they have created an issue of material fact as to who started the physical altercation. I therefore would leave that question for a jury.

What is not in dispute, however, is the extreme degree of force that Denver Davis employed in the altercation. Even if a jury were to believe that Mr. Bailey was the aggressor, Denver Davis did not retreat after punching Mr. Bailey so hard that he landed in a ditch. Eddie Davis's testimony paints a gruesome image of Mr. Bailey pinned down in a ditch by the weight of Denver Davis, who is sitting on his chest pummeling him in the face and head. The defendants can point to no evidence that indicates that the Denver Davis's self-defense was reasonable, the only type of self-defense covered in the insurance policy. [Docket 5, p.17] ("This exclusion does not apply to 'bodily injury' resulting from the use of ***reasonable force*** to protect persons or property." (emphasis added)). The record indicates that Mr. Bailey suffered a closed head trauma, a broken nose, two black eyes and various other injuries. As the West Virginia Supreme Court has held "[t]he amount of force used in defense must not be excessive and must be reasonable in relation to the perceived threat." *Collins*

*v. Bennett*, 486 S.E.2d 793, 797 (1997) (citing *Reynolds v. Griffith,* 30 S.E.2d 81 (W.Va. 1944), and *State v. Miller,* 102 S.E. 303 (W.Va. 1919)). The amount of force Denver Davis used was clearly excessive, and does not approach the level of reasonableness required by the insurance policy and West Virginia law.

I therefore **GRANT** the plaintiff's Motion for Summary Judgment [Docket 43] as to their complaint against the defendants. Having found as a matter of law that the insurance policy at issue does not cover damages for an unreasonable and excessive use of force, and because State Auto seeks a declaration that there is no insurance coverage, the court *sua sponte* **GRANTS** partial summary judgment in favor of the plaintiffs on the defendant's counterclaim, which alleges bad faith against State Auto. That is, pursuant to Federal Rule of Civil Procedure 56(c), the court **FINDS** that State Auto is entitled to judgment as a matter of law that it has no obligation to indemnify the defendants for damages arising under the state court complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence.").

The court further **DENIES** the defendants' Motion for Leave to File Motion for Summary Judgment [Docket 57]. The court's scheduling order required that all summary judgment or dispositive motions be filed by August 15, 2007 [Docket 19]. The defendants filed their Motion for Leave over two months late, and counsel offers no reason for the delay. Even if the court were to entertain the late-filed motion, the arguments are baseless. The defendants have pointed to no evidence which would implicate the cited authority. *See Canal Ins. Co. v. Sherman*, 430 F. Supp. 2d 478 (E.D. Pa. 2006).

-7-

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:       October 29, 2007

_____
Joseph R. Goodwin, Chief Judge